## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ANDREW PERRONG, on behalf of himself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 19-cv-3871 |
| PROSPER TRADING ACADEMY, LLC and SCOTT BAUER | ) ) ) | Hon. Sara L. Ellis |
| Defendants. | ) ) ) | |

### DEFENDANT PROSPER TRADING ACADEMY, LLC's ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT

Now comes Defendant, Prosper Trading Academy, LLC ("Prosper"), by and through its attorneys, Latimer LeVay Fyock LLC and Hahn, Loeser & Parks LLP, as for its Answer and Affirmative Defenses to the Complaint ("Complaint") filed by Plaintiff Andrew Perrong, states as follows:

### PRELIMINARY STATEMENT

1.     Plaintiff Andrew Perrong ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

**ANSWER**: Prosper admits that this action arises out of the alleged wrongdoing on its part under the TCPA, which statute speaks for itself. Prosper denies any such wrongdoing on its part, and otherwise denies the allegations contained in paragraph 1 of the Complaint.

2.     The Plaintiff alleges that Prosper Trading Academy, LLC ("Prosper Trading Academy"), as authorized by its Chief Executive Officer, Scott Bauer, sent automated text message calls to consumers' cellular telephone numbers, including the Plaintiff's, which is prohibited by the TCPA. The calls were also made to some individuals despite their presence on the National Do Not Call Registry. Furthermore, this Complaint relates to Prosper Trading

Academy's conduct of making telemarketing calls to individuals in the absence of any "do not call" policy or training, as well as making such calls to individuals who previously indicated that they no longer wanted to be contacted, and to otherwise obtain injunctive and monetary relief for all persons injured by their conduct.

> **ANSWER:** Prosper denies the allegations contained in paragraph 2 of the Complaint.

3.     The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

> **ANSWER:** Prosper admits that Plaintiff seeks to bring this action on behalf of a proposed

nationwide class, but Prosper denies any wrongdoing on its part, and otherwise denies the allegations

contained in paragraph 3 of the Complaint.

4.     A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

> **ANSWER:** Prosper denies the allegations contained in paragraph 4 of the Complaint.

## PARTIES

5.     Plaintiff Andrew Perrong resides in Pennsylvania.

> **ANSWER:**    On information and belief, Prosper admits the allegations contained in

paragraph 5 of the Complaint.

6.     Defendant Prosper Trading Academy, LLC is a Delaware limited liability company with its principal place of business at 111 W. Jackson Blvd., Suite 1122 in Chicago, IL 60604. Prosper Trading Academy has a registered agent of Duggan Bertsch, LLC located at 303 W. Madison St., Suite 1000 in Chicago, IL 60606.

> **ANSWER:** Prosper admits the allegations contained in paragraph 6 of the Complaint.

7.     Defendant Scott Bauer is the Chief Executive Officer of Prosper Trading Academy and is an Illinois resident.

> **ANSWER:** Prosper admits the allegations contained in paragraph 7 of the Complaint.

## JURISDICTION & VENUE

8.      The Court has federal question subject matter jurisdiction over these TCPA claims. *Mints v. Arrow Financial Services, LLC,* 132 S. Ct. 740 (2012).

**ANSWER**:  Prosper admits the allegations contained in paragraph 8 of the Complaint.

9.      Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1) because Prosper Trading Academy resides in this District.

**ANSWER**:  Prosper admits the allegations contained in paragraph 9 of the Complaint.

10.      Venue is proper pursuant to 28 U.S.C. § 1391 (b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District as the telemarketing calls at issue that gave rise to the Plaintiffs claims were directed from and/or occurred in this District.

**ANSWER**:  Prosper admits the allegations contained in paragraph 10 of the Complaint.

### THE TELEPHONE CONSUMER PROTECTION ACT

11.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[unrestricted telemarketing... can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

**ANSWER**:  Prosper admits that Congress enacted the TCPA in 1991, and further states that

the provisions contained in the TCPA speak for themselves.  Prosper is without information sufficient

either to admit or deny the remaining allegations contained in paragraph 11 of the Complaint, and

therefore denies those allegations.

### The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones

12.      The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." *See* 47 U.S.C. § 227(b)(l)(A)(iii).

**ANSWER**:  Prosper states that the provisions contained in the TCPA speak for themselves,

and denies any allegations inconsistent with those provisions.  Further answering, Prosper states that

the allegations contained in paragraph 12 of the Complaint state legal conclusions for which no answer

is required.

13.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

**ANSWER**:  Prosper states that the provisions contained in the TCPA speak for themselves, and denies any allegations inconsistent with those provisions.  Further answering, Prosper states that the allegations contained in paragraph 13 of the Complaint state legal conclusions for which no answer is required.

14.     In enacting the TCPA, Congress expressly found that "[unrestricted telemarketing... can be an intrusive invasion of privacyf,]... consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers],... [e]vidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy[,]... [and that] [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion."

**ANSWER**:  Prosper states that the provisions contained in the TCPA speak for themselves, and denies any allegations inconsistent with those provisions.  Further answering, Prosper is without information sufficient either to admit or deny the allegations contained in paragraph 14 of the Complaint, and therefore denies those allegations.

15.     In enacting the TCPA, Congress gave the Federal Communications Commission ("FCC") the power to prescribe regulations to implement the TCPA.

**ANSWER**:  Prosper states that the allegations contained in paragraph 15 of the Complaint state legal conclusions for which no answer is required.

16.     In 2013, the FCC prescribed a regulation requiring prior express written consent for all autodialed or prerecorded calls ("robocalls") which include or introduce an advertisement *or* which constitutes telemarketing to wireless numbers. Specifically, it required:

"[A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing

system or an artificial or prerecorded voice, and the telephone number to which the
signatory authorizes such advertisements or telemarketing messages to be delivered.

(i)   The written agreement shall include a clear and conspicuous disclosure
informing the person signing that:

(A) By executing the agreement, such person authorizes the seller to deliver or
cause to be delivered to the signatory telemarketing calls using an automatic
telephone dialing system or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree
to enter into such an agreement as a condition of purchasing any property, goods, or
services.

47 C.F.R. §§ 64.1200(a)(2) and (f)(8).

**ANSWER**:  Prosper states that the provisions contained in the Code of Federal Regulations

speak for themselves, and Prosper denies any allegations inconsistent with such provisions.  Further

answering, Prosper states that the allegations contained in paragraph 16 of the Complaint state legal

conclusions for which no answer is required and that the referenced regulation was set aside by the

United States Court of Appeals for the District of Columbia in *ACA International v. Federal

Communications Commission*, No. 15-1221 (Mar. 16, 2018).

17.   A text message is a "call" for purposes of the TCPA.

**ANSWER**:  Prosper states that the allegations contained in paragraph 17 of the Complaint

state legal conclusions for which no answer is required.

## The TCPA's Requirement to Have Sufficient Policies In Order to
## Honor Requests to Stop Contacting Individuals

18.   The TCPA specifically required the FCC to "initiate a rulemaking proceeding
concerning the need to protect residential telephone subscribers' privacy rights to avoid
receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

**ANSWER**:  Prosper states that the provisions contained in the TCPA speak for themselves,

and Prosper denies any allegations inconsistent with such provisions.  Further answering, Prosper states

that the allegations contained in paragraph 18 of the Complaint state legal conclusions for which no

answer is required.

19.     The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of ... company-specific "do not call systems" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

**ANSWER**:  Prosper states that the provisions contained in the TCPA speak for themselves,

and Prosper denies any allegations inconsistent with such provisions.  Further answering, Prosper states

that the allegations contained in paragraph 19 of the Complaint state legal conclusions for which no

answer is required.

20.     Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules that every company engaging in telemarketing is required to comply with. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 7 FCC Red. 8752 (1992) ("TCPA Implementation Order").

**ANSWER**:  Prosper states that the allegations contained in paragraph 20 of the Complaint

state legal conclusions for which no answer is required.

21.     The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, 23.

**ANSWER**:     Prosper states that the allegations contained in paragraph 21 of the Complaint

state legal conclusions for which no answer is required.

22.     However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

**ANSWER**:     Prosper states that the allegations contained in paragraph 22 of the Complaint

state legal conclusions for which no answer is required.

23.     It accordingly placed the burden on telemarketers to implement and prove the implementation of their compliance procedures.

**ANSWER**: Prosper states that the allegations contained in paragraph 23 of the Complaint state

legal conclusions for which no answer is required.

24.     These regulations are codified at 47 CFR 64.1200(d)(l)-(6).

**ANSWER:**     Prosper states that the provisions contained in the Code of Federal Regulations

speak for themselves, and Prosper denies any allegations inconsistent with such provisions. Further

answering, Prosper states that the allegations contained in paragraph 24 of the Complaint state legal

conclusions for which no answer is required.

25.     Specifically, these regulations require a company to keep a written policy, available
upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the
existence and use of its internal do-not-call list, and record and honor "do not call" requests for no
less than five years from the time the request is made. 47 CFR 64.1200(d)(l,2, 3, 6).

**ANSWER:** Prosper states that the provisions contained in the Code of Federal Regulations

speak for themselves, and Prosper denies any allegations inconsistent with such provisions. Further

answering, Prosper states that the allegations contained in paragraph 25 of the Complaint state legal

conclusions for which no answer is required.

26.     The regulations also require "[a] person or entity making a call for telemarketing
purposes must provide the called party with the name of the individual caller, the name of the
person or entity on whose behalf the call is being made, and a telephone number or address at
which the person or entity can be contacted." 47 C.F.R. 64.1200(d)(4).

**ANSWER:**     Prosper states that the provisions contained in the Code of Federal Regulations

speak for themselves, and Prosper denies any allegations inconsistent with such provisions. Further

answering, Prosper states that the allegations contained in paragraph 26 of the Complaint state legal

conclusions for which no answer is required.

27.     The regulations prohibit a company from making telemarketing calls unless they
have implemented these policies and procedures. 47 CFR 64.1200(d).

**ANSWER:** Prosper states that the provisions contained in the Code of Federal Regulations

speak for themselves, and Prosper denies any allegations inconsistent with such provisions. Further

answering, Prosper states that the allegations contained in paragraph 27 of the Complaint state legal

conclusions for which no answer is required.

28.    Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

**ANSWER**:  Prosper states that the allegations contained in paragraph 28 of the Complaint state legal conclusions for which no answer is required.

**The National Do Not Call Registry**

29.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. 64.1200(c)(2).

**ANSWER**:  Prosper states that the provisions contained in the Code of Federal Regulations speak for themselves, and Prosper denies any allegations inconsistent with such provisions.  Further answering, Prosper states that the allegations contained in paragraph 29 of the Complaint state legal conclusions for which no answer is required.

30.    A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

**ANSWER**:  Prosper states that the provisions contained in the Code of Federal Regulations speak for themselves, and Prosper denies any allegations inconsistent with such provisions.  Further answering, Prosper states that the allegations contained in paragraph 30 of the Complaint state legal conclusions for which no answer is required.

31.    The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. 64.1200(c)(2).

**ANSWER**:  Prosper states that the provisions contained in the TCPA and in the Code of Federal Regulations speak for themselves, and Prosper denies any allegations inconsistent with such provisions.  Further answering, Prosper states that the allegations contained in paragraph 31 of the Complaint state legal conclusions for which no answer is required.

**Individual Liability under the TCPA**

32.    Under the TCPA, an individual may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia:*

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person.*

47. U.S.C. §217.

**ANSWER:**    Prosper states that the provisions contained in the TCPA speak for themselves, and Prosper denies any allegations inconsistent with such provisions. Further answering, Prosper states that the allegations contained in paragraph 32 of the Complaint state legal conclusions for which no answer is required.

33.    When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Season,* No. 10-10010, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute.") (internal citation omitted); *Maryland v. Universal Elections,* 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**ANSWER:**    Prosper states that the allegations contained in paragraph 33 of the Complaint state legal conclusions for which no answer is required.

34.    This is consistent with the general tort principle that corporate officers or agents are personally liable for those torts which they personally commit, or which they direct or participate in, even though performed in the name of a company.

**ANSWER:**    Prosper states that the allegations contained in paragraph 34 of the Complaint state legal conclusions for which no answer is required.

35.    Here, Mr. Bauer both personally participated in and authorized the automated telemarketing conduct.

**ANSWER:**    Prosper denies the allegations contained in paragraph 35 of the Complaint.

**The Growing Problem of Automated Calls**

36.    When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

**ANSWER:**    Prosper is without information sufficient either to admit or deny the allegations

contained in paragraph 36 of the Complaint, and therefore denies such allegations.

37.    By 2003, telemarketers were calling 104 million Americans every day, abetted by the proliferation of new and more powerful autodialing technology. *In re Rules and Regulations Implementing the TCPA of 1991,* 18 FCC Red. 14014, ¶¶2, 8 (2003).

**ANSWER:**  Prosper is without information sufficient either to admit or deny the allegations

contained in paragraph 37 of the Complaint, and therefore denies such allegations.

38.    Unfortunately, the problems Congress identified when it enacted the TCPA have only grown worse in recent years.

**ANSWER:**  Prosper is without information sufficient either to admit or deny the allegations

contained in paragraph 38 of the Complaint, and therefore denies such allegations.

39.    Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018--a 466% increase in three years.

**ANSWER:**  Prosper is without information sufficient either to admit or deny the allegations

contained in paragraph 39 of the Complaint, and therefore denies such allegations.

40.    According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited April 9, 2019). YouMail estimates that in 2019 robocall totals will exceed 60 billion. *See id.*

**ANSWER:**  Prosper is without information sufficient either to admit or deny the allegations

contained in paragraph 40 of the Complaint, and therefore denies such allegations.

41.    The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited April 10,2019).

**ANSWER:**  Prosper is without information sufficient either to admit or deny the allegations

contained in paragraph 41 of the Complaint, and therefore denies such allegations.

## FACTUAL ALLEGATIONS

42.     Prosper Trading Academy sells investment related services to individuals.

**ANSWER**: Prosper admits the allegations contained in paragraph 42 of the Complaint.

43.     To generate business, Prosper Trading Academy relies on telemarketing.

**ANSWER**: Prosper admits that it has utilized telemarketing in the course of its business, but denies that it relies on telemarketing to generate business. Prosper otherwise denies the remaining allegations contained in paragraph 43 of the Complaint.

44.     Prosper Trading Academy's telemarketing includes sending automated calls and text messages.

**ANSWER**: Prosper denies the allegations contained in paragraph 44 of the Complaint.

45.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

**ANSWER**: Prosper states that the provisions contained in the TCPA speak for themselves, and denies any allegations inconsistent with those provisions. Prosper states that the allegations contained in paragraph 45 of the Complaint state legal conclusions for which no answer is required.

46.     Mr. Perrong's telephone number, (215) 208-XXXX, is a cellular telephone number.

**ANSWER**: Prosper is without information sufficient either to admit or deny the allegations contained in paragraph 46 of the Complaint.

47.     Mr. Perrong's telephone number, (215) 208-XXXX, is on the National Do Not Call Registry, and had been for years prior to the contact at issue.

**ANSWER**: Prosper is without information sufficient either to admit or deny the allegations contained in paragraph 47 of the Complaint.

48.     Mr. Perrong's telephone number, (215) 208-XXXX, is for personal use and has never been associated with a business.

**ANSWER**: Prosper is without information sufficient either to admit or deny the allegations contained in paragraph 48 of the Complaint.

49.     On July 6, 2018, Mr. Perrong contacted Prosper Trading Academy via text message in response to an advertisement for a "free stock tip".

**ANSWER**: Prosper admits the allegations contained in paragraph 49 of the Complaint.

50.     Mr. Perrong was sent the following automated text message on July 6, 2018:

> PT: We're currently looking to buy Etsy. ETSY at 43.37. Learn why 800.764.7131 REPLY YES to receive SMS from propsertrading.com

**ANSWER**: Prosper admits the allegations contained in paragraph 50 of the Complaint.

51.     The call was made from the SMS Code 48542.

**ANSWER**:     Prosper admits the allegations contained in paragraph 51 of the Complaint.

52.     After receiving the text on July 6, 2018, Mr. Perrong never used the company's services.

**ANSWER**: Prosper admits the allegations contained in paragraph 52 of the Complaint.

53.     Mr. Perrong also never consented to receive any text messages beyond the promised "stock tip" message.

**ANSWER**: Prosper admits the allegations contained in paragraph 53 of the Complaint.

54.     The Plaintiff did not reply YES to receive SMS from prospertrading.com.

**ANSWER**: Prosper admits the allegations contained in paragraph 54 of the Complaint.

55.     Instead, the Plaintiff replied "STOP".

**ANSWER**: Prosper denies the allegations contained in paragraph 55 of the Complaint.

56.     The Plaintiff received a response "we will stop sending you".

**ANSWER**: Prosper denies the allegations contained in paragraph 56 of the Complaint.

57.     After that, Mr. Perrong never provided his written permission to receive further text messages or calls.

**ANSWER**: Prosper denies the allegations contained in paragraph 57 of the Complaint.

58.    However, the Defendants did not stop.

**ANSWER**:    Prosper denies the allegations contained in paragraph 58 of the Complaint.

59.    The Plaintiff received the following text message on May 20, 2019:

> New China 'Trade War' developments... We're revealing tactics to win off these movements at a live webinar this week. Reply "JOIN" to reserve your free seat now.

**ANSWER**:    Prosper admits the allegations contained in paragraph 59 of the Complaint.

60.    This text message was sent at 10:02 PM EST, which is later than solicitation conduct is permitted to a telephone.

**ANSWER**: Prosper denies the allegations contained in paragraph 60 of the Complaint.

61.    The Plaintiff received another text message on May 22, 2019:

> T-minus One Hour until our live webinar revealing deadly accurate strategies to win during these Tariff TRADE WARS... Reply "JOIN" to reserve your seat now.

**ANSWER**:    Prosper admits the allegations contained in paragraph 61 of the Complaint.

62.    The fact that the May 2019 text messages used a generic script and were not personalized means that they appear to be sent *en masse*.

**ANSWER**: Prosper denies the allegations contained in paragraph 62 of the Complaint.

63.    These facts support the Plaintiff's allegations that the calls were made using an "Automatic Telephone Dialing System," as that term is defined by the TCPA.

**ANSWER**: Prosper denies the allegations contained in paragraph 63 of the Complaint.

64.    The May 2019 text messages did not identify the company sending the text message.

**ANSWER**:  Prosper admits that the specific text messages sent in May 2019 did not identify the company sending the text messages, but that the company sending the text messages was identified in the text message chain in which the specific text messages were sent.  Prosper

-13-

denies any other remaining allegations or inferences contained in paragraph 64 of the Complaint.

65.     The May 2019 text messages did not provide any way for the recipient to opt out of future messages.

**ANSWER**: Prosper admits that the specific text messages sent in May 2019 did not repeat

instructions for opting out of future messages, but that the text message chain in which the specific

text messages were sent did include instructions for opting out of future messages. Prosper denies

any other remaining allegations or inferences contained in paragraph 65 of the Complaint.

66.     The May 2019 text messages were sent even though Mr. Perrong opted out by way of the 2018 text message, and had his opt-out confirmed.

**ANSWER**: Prosper admits that it sent text messages to Plaintiff in 2019, but denies any

other remaining allegations or inferences contained in paragraph 66 of the Complaint.

67.     Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls, their telephone batteries were depleted, their limited storage space was utilized, and their privacy was improperly invaded.

**ANSWER**: Prosper denies the allegations contained in paragraph 67 of the Complaint.

68.     Moreover, these calls injured plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

**ANSWER**: Prosper denies the allegations contained in paragraph 68 of the Complaint.

### CLASS ACTION ALLEGATIONS

69.     As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a classes [sic] of all other persons or entities similarly situated throughout the United States.

**ANSWER**:     Prosper admits that Plaintiff purports to bring this action as a class action, but

denies that any sort of class exists and further denies that Plaintiff is similarly situated to other persons

or entities or could properly represent a class of individuals or entities.

70.     The classes of persons Plaintiff proposes to represent are tentatively defined as:

**Autodialed Class:** All persons within the United States to whom: (1) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (2) to their cellular telephone number; (3) using the telephone system(s) used in calling Plaintiff cellular telephone number; and (4) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

**National Do Not Call Registry Class:** All persons in the United States who, from four years prior to the filing of this action: (1) Defendants (or an agent acting on behalf of Defendants) made (2) two or more telemarketing calls (3) promoting Defendants' products or services; (4) to a residential phone number that was listed on the National Do Not Call Registry for at least 30 days before the first call; and (5) within any twelve-month period.

**Internal PNC Class:** All persons in the United States who from four years prior to the filing of this action: (1) Defendants (or an agent acting on behalf of Defendants) called (2) on their residential line (3) more than two times in a 12-month period (4) for substantially the same reason Defendants called Plaintiff Perrong.

Excluded from the classes are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

**ANSWER:** Prosper admits that Plaintiff purports to represent the classes defined in this paragraph but denies that any sort of class exists and that Plaintiff is similarly situated to other persons or entities or could properly represent the classes that he has defined. Further answering, Prosper states that the purported classes are impermissible "fail safe" classes and that Plaintiff is not a member of the so-called "National Do Not Call Registry Class" or the so-called "Internal PNC Class."

71. The Classes as defined above are identifiable through phone records and phone number databases.

**ANSWER:** Prosper admits that it has kept records of all texts that it has sent within the marketing program about which Plaintiff complains in this case. Prosper denies any other allegations or inferences contained in paragraph 71 of the Complaint.

72. The potential Classes' members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

**ANSWER:** Prosper denies the allegations contained in paragraph 72 of the Complaint.

73.     Plaintiff is a member of the proposed Classes.

**ANSWER:**     Prosper denies the allegations contained in paragraph 73 of the Complaint.

74.     There are questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:
        a.     Whether Defendants violated the TCPA by using automated calls to contact putative Class members' cellular telephones;
        b.     Whether Defendants placed calls without obtaining the recipients' prior express written consent for the call;
        c.     Whether the Plaintiff and the Classes' members are entitled to damages in the amounts liquidated by the TCPA because of Defendant' actions.

**ANSWER:**  Prosper denies the allegations contained in paragraph 43 of the Complaint.

75.     Plaintiff's claims are typical of the claims of the Classes' members. Plaintiff's claims, like the claims of the Classes, arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

**ANSWER:**     Prosper denies the allegations contained in paragraph 75 of the Complaint.

76.     Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the Classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

**ANSWER:**  Prosper denies the allegations contained in paragraph 76 of the Complaint.

77.     Common questions of law and fact predominate over questions affecting only individual Classes' members. The only individual question concerns identification of Classes' members, which will be ascertainable from records maintained by Defendants and/or their agents.

**ANSWER:**  Prosper denies the allegations contained in paragraph 77 of the Complaint.

78.     Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a classes action.

**ANSWER:**     Prosper denies the allegations contained in paragraph 77 of the Complaint.

79.     The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**ANSWER:**  Prosper is without information sufficient either to admit or deny the allegations

contained in paragraph 79 of the Complaint, and therefore denies those allegations.

80.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for classes membership described above.

**ANSWER**:  Prosper is without information sufficient either to admit or deny the allegations

contained in paragraph 80 of the Complaint, and therefore denies those allegations.

## CAUSES OF ACTION

### Count One:
### Violation of the TCPA's Automated Calling provisions
### (On behalf of Plaintiff and the Autodialed Class)
### (Against Prosper Trading Academy and Mr. Bauer)

81.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

**ANSWER**:  Prosper realleges and incorporates its responses to the foregoing allegations

as if fully set forth herein.

82.     The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Autodialed Class using an ATDS and/or artificial or prerecorded voice.

**ANSWER**:     Prosper denies the allegations contained in paragraph 82 of the Complaint.

83.     As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf s violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Autodialed Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B). The Court may award up to $1,500 if the violation was found to be "willful or knowing".

**ANSWER**:     Prosper denies the allegations contained in paragraph 83 of the Complaint.

84.     Plaintiff and members of the Autodialed Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

**ANSWER:** Prosper denies the allegations contained in paragraph 84 of the Complaint.

85. The Defendants' violations were negligent and/or knowing.

**ANSWER:** Prosper denies the allegations contained in paragraph 85 of the Complaint.

**Count Two:**
**Violation of the TCPA's DNC provisions**
**(On behalf of Plaintiff and the National Do Not Call Registry Class)**
**(Against Prosper Trading Academy and Mr. Bauer)**

86. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

**ANSWER:** Prosper realleges and incorporates its responses to the foregoing allegations

as if fully set forth herein.

87. The Defendants violated the TCPA by (a) initiating telephone solicitations to persons and entities whose telephone numbers were listed on the Do Not Call Registry, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(c); 47 C.F.R. 64.1200(c)(2).

**ANSWER:** Prosper denies the allegations contained in paragraph 87 of the Complaint.

88. The Defendants' violations were negligent and/or knowing.

**ANSWER:** Prosper denies the allegations contained in paragraph 88 of the Complaint.

89. As a result of the Defendants' violations of the TCPA, 47 U.S.C. § 227(c)(5), Plaintiff and members of the National Do Not Call Registry Class are entitled of an award of up to $500 in damages for each call made in violation of this section. The Court may award up to $1,500 if the violation was found to be "willful or knowing".

**ANSWER:** Prosper denies the allegations contained in paragraph 89 of the Complaint.

90. Plaintiff and members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry.

**ANSWER:** Prosper denies the allegations contained in paragraph 85 of the Complaint.

## Count Three:

### Violation of the TCPA's Internal DNC Provisions
### (On Behalf of Plaintiff Perrong and the Internal DNC Class)
### (Against Prosper Trading Academy and Mr. Bauer)

91.    Defendants placed two or more telemarketing calls to Plaintiff and Internal DNC Class Members' telephone numbers.

**ANSWER**:  Prosper denies the allegations contained in paragraph 91 of the Complaint.

92.    Defendants did so despite not having a written policy pertaining to "do not call" requests.

**ANSWER**:  Prosper denies the allegations contained in paragraph 92 of the Complaint.

93.    Defendants did so despite not training its personnel on the existence or use of any internal "do not call" list.

**ANSWER**:  Prosper denies the allegations contained in paragraph 93 of the Complaint.

94.    Defendants did so despite not recording or honoring "do not call" requests.

**ANSWER**:  Prosper denies the allegations contained in paragraph 94 of the Complaint.

95.    Defendants' violations were negligent and/or knowing.

**ANSWER**:  Prosper denies the allegations contained in paragraph 95 of the Complaint.

96.    Accordingly, Plaintiff and Internal DNC Class Members are entitled to an award of $500 in statutory damages for each violative telephone call pursuant to 47 U.S.C. § 227(c)(5).

**ANSWER**:  Prosper denies the allegations contained in paragraph 96 of the Complaint.

97.    Plaintiff and Internal DNC Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

**ANSWER**:  Prosper denies the allegations contained in paragraph 97 of the Complaint.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Prosper has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because any violation is the result of error and as part of Prosper's routine business practice Prosper implements policies and procedures in order to be in compliance with the requirements of the TCPA. Prosper meets the error standards set forth in 47 CFR 64.1200(c)(2)(i) and 47 CFR 64.1200(d).

## THIRD AFFIRMATIVE DEFENSE

Prosper at all times acted in good faith and within reasonable commercial standards as to the matters alleged in the Complaint. Prosper has established and implemented, with due care, reasonable practices and procedures to effectively prevent violations of the TCPA.

## FOURTH AFFIRMATIVE DEFENSE
### (As to National "Do Not Call Registry Class")

Plaintiff provided his invitation or permission for Prosper to call him. In particular, as Plaintiff alleges in Paragraph 49 of his Complaint, "On July 6, 2018, Mr. Perrong contacted Prosper Trading Academy via text message in response to an advertisement for a 'free stock tip'." Although Plaintiff claims he later asked Prosper to stop contacting him (purportedly putting him in the Internal DNC Class), Plaintiff initially gave Prosper permission to call his telephone such that subsequent calls by Prosper to Plaintiff did not violate 47 C.F.R. 64.1200(c)(2).

-20-

## PRAYER FOR RELIEF

WHEREFORE, Defendant seeks judgment in its favor as to all Causes of Actions and respectfully requests that the Complaint be dismissed in its entirety.

Dated: July 23, 2019

Respectfully submitted,

PROSPER TRADING ACADEMY, LLC

By:    /s/ Richard A. Saldinger
        One of Its Attorneys

**LATIMER LEVAY FYOCK LLC**
Richard A. Saldinger – ARDC #6209930
Mark B. Goldstein – ARDC #6306038
Email: rsaldinger@llflegal.com
Email: mgoldstein@llflegal.com
55 W. Monroe Street, Suite 1100
Chicago, IL 60606
(312) 422-8000
(312) 422-8001

**HAHN LOESER & PARKS LLP**
Ian H. Fisher – ARDC #6224920
Email: ifisher@hahnlaw.com
125 S. Wacker Ave., Suite 2900
Chicago, IL 60606
(312) 637-3000
*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I, Richard A. Saldinger, an attorney, hereby certify that on this 23rd day of July 2019, I electronically filed the foregoing **Defendant Prosper Trading Academy, LLC's Answer and Affirmative Defenses To Complaint** with the Clerk of the Court using the CM/ECF system, which will automatically send email notifications of such filing to all registered parties and counsel.

Alan W. Nicgorski anicgorski@hansenreynolds.com
Michael C. Lueder mlueder@hansenreynolds.com
Anthony Paronich anthony@paronichlaw.com


/s/ Richard A. Saldinger _____