**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ANDREW PERRONG on behalf of himself and others similarly situated, | : : : | |
| Plaintiff, | : : | Case No. 1:19-cv-03871 |
| v. | : : : | |
| PROSPER TRADING ACADEMY, LLC, and SCOTT BAUER | : : : | |
| Defendants. | : | |

_____/

## <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>

### PRELIMINARY STATEMENT

1.      Plaintiff Andrew Perrong ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.      The Plaintiff alleges that Prosper Trading Academy, LLC ("Prosper Trading Academy"), as authorized by its Chief Executive Officer, Scott Bauer, sent automated text message calls to consumers' cellular telephone numbers, including the Plaintiff's, which is prohibited by the TCPA. The calls were also made to some individuals despite their presence on the National Do Not Call Registry. Furthermore, this Complaint relates to Prosper Trading Academy's conduct of making telemarketing calls to individuals in the absence of any "do not call" policy or training, as well as making such calls to individuals who previously indicated that

they no longer wanted to be contacted, and to otherwise obtain injunctive and monetary relief for all persons injured by their conduct.

3.     The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

4.     A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

5.     Plaintiff Andrew Perrong resides in Pennsylvania.

6.     Defendant Prosper Trading Academy, LLC is a Delaware limited liability company with its principal place of business at 111 W. Jackson Blvd., Suite 1122 in Chicago, IL 60604. Prosper Trading Academy has a registered agent of Duggan Bertsch, LLC located at 303 W. Madison St., Suite 1000 in Chicago, IL 60606.

7.     Defendant Scott Bauer is the Chief Executive Officer of Prosper Trading Academy and is an Illinois resident.

## JURISDICTION & VENUE

8.     The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

9.     Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1) because Prosper Trading Academy resides in this District.

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District as the telemarketing calls at issue that gave rise to the Plaintiff's claims were directed from and/or occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT

11.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

**The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones**

12.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).

13.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

14.     In enacting the TCPA, Congress expressly found that "[u]nrestricted telemarketing… can be an intrusive invasion of privacy[,]… consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers[,],… [e]vidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy[,]… [and that] [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the

3

consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion."

15.     In enacting the TCPA, Congress gave the Federal Communications Commission ("FCC") the power to prescribe regulations to implement the TCPA.

16.     In 2013, the FCC prescribed a regulation requiring prior express written consent for all autodialed or prerecorded calls ("robocalls") which include or introduce an advertisement *or* which constitutes telemarketing to wireless numbers.  Specifically, it required:

> "[A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.
>
> (i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that:
>
> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

47 C.F.R. §§ 64.1200(a)(2) and (f)(8).

17.     A text message is a "call" for purposes of the TCPA.

**The TCPA's Requirement to Have Sufficient Policies In Order to
<u>Honor Requests to Stop Contacting Individuals</u>**

18.     The TCPA specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

4

19.    The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific "do not call systems" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

20.    Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules that every company engaging in telemarketing is required to comply with. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (1992) ("TCPA Implementation Order").

21.    The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id*. at 8765, ¶ 23.

22.    However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

23.    It accordingly placed the burden on telemarketers to implement and prove the implementation of their compliance procedures.

24.    These regulations are codified at 47 CFR 64.1200(d)(1)-(6).

25.    Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR 64.1200(d)(1, 2, 3, 6).

26.     The regulations also require "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted."  47 C.F.R. 64.1200(d)(4).

27.     The regulations prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 CFR 64.1200(d).

28.     Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

**The National Do Not Call Registry**

29.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. 64.1200(c)(2).

30.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

31.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made.  47 U.S.C. § 227(c)(5); 47 C.F.R. 64.1200(c)(2).

**Individual Liability under the TCPA**

32.     Under the TCPA, an individual may be personally liable for the acts alleged in this Complaint pursuant to  47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his

employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*.

47. U.S.C. § 217.

33. When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g.*, *Jackson Five Star Catering, Inc. v. Beason*, No. 10-10010, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute.") (internal citation omitted); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

34. This is consistent with the general tort principle that corporate officers or agents are personally liable for those torts which they personally commit, or which they direct or participate in, even though performed in the name of a company.

35. Here, Mr. Bauer both personally participated in and authorized the automated telemarketing conduct.

36. Mr. Bauer personally authorized the sending of text messages as part of a customer acquisition campaign.

37. Mr. Bauer developed the company's process for obtaining phone numbers that were sent text messages.

38. During a radio advertisement, Mr. Bauer mentioned that he ["I"] was going to be texting recipients the stock tips.

39.    Mr. Bauer's voice is the only voice on the radio advertisement, and personally encourages listeners to text "him" at the short code provided.

40.    Mr. Bauer exerted substantial control over the content and wording of the automated telemarketing text messages, including by selecting the stock about which he was going to give a tip.

41.    Mr. Bauer is also personally responsible for handling any complaints related to Prosper's telemarketing practices.

42.    In fact, in response to an inquiry from Mr. Perrong about the illegal text messages prior to the filing of this lawsuit, Mr. Bauer personally responded asserting a merit based defense.

43.    Mr. Bauer also has personal control of the marketing activities of his company, including the ability to cease the telemarketing activity of the company.

**The Growing Problem of Automated Calls**

44.    When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

45.    By 2003, telemarketers were calling 104 million Americans every day, abetted by the proliferation of new and more powerful autodialing technology. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

46.    Unfortunately, the problems Congress identified when it enacted the TCPA have only grown worse in recent years.

47.    Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

48.     According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited April 9, 2019). YouMail estimates that in 2019 robocall totals will exceed 60 billion. *See id.*

49.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited April 10, 2019).

## FACTUAL ALLEGATIONS

50.     Prosper Trading Academy sells investment related services to individuals.

51.     To generate business, Prosper Trading Academy relies on telemarketing.

52.     Prosper Trading Academy's telemarketing includes sending automated calls and text messages.

53.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

54.     Mr. Perrong's telephone number, (215) 208-XXXX, is a cellular telephone number.

55.     Mr. Perrong's telephone number, (215) 208-XXXX, is on the National Do Not Call Registry, and had been for years prior to the contact at issue.

56.     Mr. Perrong's telephone number, (215) 208-XXXX, is for personal use and has never been associated with a business.

57.     On July 6, 2018 Mr. Perrong contacted Prosper Trading Academy via text message in response to an advertisement for a "free stock tip".

58.     Mr. Perrong was sent the following automated text message on July 6, 2018:

> PT: We're currently looking to buy Etsy. ETSY at 43.37. Learn why 800.764.7131 REPLY YES to receive SMS from propsertrading.com

59.     The call was made from the SMS Code 48542.

60.     After receiving the text on July 6, 2018, Mr. Perrong never used the company's services.

61.     Mr. Perrong also never consented to receive any text messages beyond the promised "stock tip" message.

62.     The Plaintiff did not reply YES to receive SMS from prospertrading.com.

63.     Instead, the Plaintiff replied "STOP".

64.     The Plaintiff received a response "we will stop sending you".

65.     After that, Mr. Perrong never provided his written permission to receive further text messages or calls.

66.     However, the Defendants did not stop.

67.     The Plaintiff received the following text message on May 20, 2019:

> New China 'Trade War' developments... We're revealing tactics to win off these movements at a live webinar this week. Reply "JOIN" to reserve your free seat now

68.     This text message was sent at 10:02 PM EST, which is later than solicitation conduct is permitted to a telephone.

69.     The Plaintiff received another text message on May 22, 2019:

> T-minus One Hour until our live webinar revealing deadly accurate strategies to win during these Tariff TRADE WARS... Reply "JOIN" to reserve your seat now.

70.     The fact that the May 2019 text messages used a generic script and were not personalized means that they appear to be sent *en masse*.

71.     These facts support the Plaintiff's allegation that the calls were made using an "Automatic Telephone Dialing System," as that term is defined by the TCPA.

72.     The May 2019 text messages did not identify the company sending the text message.

73.     The May 2019 text messages did not provide any way for the recipient to opt out of future messages.

74.     The May 2019 text messages were sent even though Mr. Perrong opted out by way of the 2018 text message, and had his opt-out confirmed.

75.     Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls, their telephone batteries were depleted, their limited storage space was utilized, and their privacy was improperly invaded.

76.     Moreover, these calls injured plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

## CLASS ACTION ALLEGATIONS

77.     As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a classes of all other persons or entities similarly situated throughout the United States.

78.     The classes of persons Plaintiff proposes to represent are tentatively defined as:

**Autodialed Class**: All persons within the United States to whom: (1) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (2) to their cellular telephone number; (3) using the telephone system(s) used in calling Plaintiff cellular telephone number; and (4) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

**National Do Not Call Registry Class**: All persons in the United States who, from four years prior to the filing of this action: (1) Defendants (or an agent acting on behalf of Defendants) made (2) two or more telemarketing calls (3) promoting Defendants' products or services; (4) to a residential phone number that was listed on the National Do Not Call Registry for at least 30 days before the first call; and (5) within any twelve-month period.

**Internal DNC Class**: All persons in the United States who from four years prior to the filing of this action: (1) Defendants (or an agent acting on behalf of Defendants) called (2) on their residential line (3) more than two times in a 12-month period (4) for substantially the same reason Defendants called Plaintiff Perrong.

Excluded from the classes are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

79.     The Classes as defined above are identifiable through phone records and phone number databases.

80.     The potential Classes' members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

81.     Plaintiff is a member of the proposed Classes.

82.     There are questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

        a.   Whether Defendants violated the TCPA by using automated calls to contact putative Class members' cellular telephones;

        b.   Whether Defendants placed calls without obtaining the recipients' prior express written consent for the call;

c.   Whether the Plaintiff and the Classes' members are entitled to damages in the amounts liquidated by the TCPA because of Defendant' actions.

83.     Plaintiff's claims are typical of the claims of the Classes' members. Plaintiff's claims, like the claims of the Classes, arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

84.     Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the Classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

85.     Common questions of law and fact predominate over questions affecting only individual Classes' members. The only individual question concerns identification of Classes' members, which will be ascertainable from records maintained by Defendants and/or their agents.

86.     Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a classes action.

87.     The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

88.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for classes membership described above.

## CAUSES OF ACTION

**Count One:**
**Violation of the TCPA's Automated Calling provisions**
**(On behalf of Plaintiff and the Autodialed Class)**
**(Against Prosper Trading Academy and Mr. Bauer)**

89.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

90.     The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Autodialed Class using an ATDS and/or artificial or prerecorded voice.

91.     As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Autodialed Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B). The Court may award up to $1,500 if the violation was found to be "willful or knowing".

92.     Plaintiff and members of the Autodialed Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

93.     The Defendants' violations were negligent and/or knowing.

**Count Two:**
**Violation of the TCPA's DNC provisions**
**(On behalf of Plaintiff and the National Do Not Call Registry Class)**
**(Against Prosper Trading Academy and Mr. Bauer)**

94.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

95.    The Defendants violated the TCPA by (a) initiating telephone solicitations to persons and entities whose telephone numbers were listed on the Do Not Call Registry, or (b) by the fact that others made those calls on its behalf.  *See* 47 U.S.C. § 227(c); 47 C.F.R. 64.1200(c)(2).

96.    The Defendants' violations were negligent and/or knowing.

97.    As a result of the Defendants' violations of the TCPA, 47 U.S.C. § 227(c)(5), Plaintiff and members of the National Do Not Call Registry Class are entitled of an award of up to $500 in damages for each call made in violation of this section. The Court may award up to $1,500 if the violation was found to be "willful or knowing".

98.    Plaintiff and members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry.

**Count Three:**
**Violation of the TCPA's Internal DNC Provisions**
**(On Behalf of Plaintiff Perrong and the Internal DNC Class)**
**(Against Prosper Trading Academy and Mr. Bauer)**

99.    Defendants placed two or more telemarketing calls to Plaintiff and Internal DNC Class Members' telephone numbers.

100.    Defendants did so despite not having a written policy pertaining to "do not call" requests.

101.    Defendants did so despite not training its personnel on the existence or use of any internal "do not call" list.

102.    Defendants did so despite not recording or honoring "do not call" requests.

103.    Defendants' violations were negligent and/or knowing.

104.    Accordingly, Plaintiff and Internal DNC Class Members are entitled to an award of $500 in statutory damages for each violative telephone call pursuant to 47 U.S.C. § 227(c)(5).

105.    Plaintiff and Internal DNC Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

**Relief Sought**

WHEREFORE, for himself and all Classes' members, Plaintiff request the following relief:

A.      Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry or to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

B.      An order enjoining Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from in the future making unsolicited autodialed calls, except for emergency purposes, to any cellular telephone number, pre-recorded voice calls, and other calls to consumers without implementing adequate policies and procedures for maintaining an internal do not call list;

C.      Because of Defendants' violations of the TCPA, Plaintiff seeks for himself and the other putative Classes' members $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3) and (c)(5).

D.      An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

E.      Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated this 25th day of July, 2019.

Respectfully submitted,

**PARONICH LAW, P.C.**

By: */s/ Anthony Paronich*
Anthony Paronich
Email: *anthony@paronichlaw.com*
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Ph. 617-485-0018
Fax: 508-318-8100

Alan W. Nicgorski; SBN: 6243574
Email: *anicgorski@hansenreynolds.com*
150 S. Wacker Drive, Suite 2400
Chicago, IL 60606
Ph. 4312-265-2252
Fax: 414-273-8476

Michael C. Lueder
Email: *mlueder@hansenreynolds.com*
301 N. Broadway, Suite 400
Milwaukee, WI 53202
Ph. 414-273-7676

Fax: 414-273-8476

**HANSEN REYNOLDS LLC**

*Attorneys for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I, hereby certify that on July 25, 2019, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notification of such to all counsel of

record.

*/s/ Anthony Paronich*
Anthony Paronich